UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONALD SLAUGHTER,<br><br>                          Plaintiff,<br><br>vs.<br><br>LABORATORY MEDICINE CONSULTANTS LTD., *et al.,*<br><br>                          Defendant. | Case No. 2:10-cv-00437-GMN-PAL<br><br>**ORDER**<br><br>(Mot Disqualify - Dkt. #15) |

Before the court is Plaintiff's Motion to Disqualify Lionel Sawyer & Collins as counsel for Defendants (Dkt. #15) filed August 9, 2010. The matter wass referred by the District Judge for a decision to the undersigned on August 13, 2010. The court has considered the motion, and Defendants' opposition (Dkt. #17).

**BACKGROUND**

The Complaint (Dkt. #1) in this case was filed on March 30, 2010. The Plaintiff, Dr. Ronald Slaughter, is licensed to practice medicine in the state of Nevada and is a resident of Clark County, Nevada. Complaint ¶ 1. On July 1, 1975, he began working for Defendant Laboratory Medicine Consultants ("LMC") as a pathologist and became a shareholder in 1978. *Id.* He worked for LMC for 31 years until his retirement on June 30, 2006. *Id.* Plaintiff has asserted claims against the Defendants for alleged violations of Sections 10(b) and 20(a) of the Exchange Act, 15 USC §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC").

Plaintiff's claims arise out of the sale of 100% of the stock of LMC to Defendant Aurora Diagnostics in 2007. Plaintiff claims that he owns 100 shares of stock of LMC pursuant to a Stockholder's Agreement executed on December 2001. Plaintiff alleges that, as a retiring equity stockholder, his 100 shares should have been held in escrow pursuant to the Stockholder's Agreement.

1  Had that been done, he would have received a full share of the sale proceeds of the $49,000,000.00
2  purchase price paid by Aurora for the outstanding capital stock of LMC.  Instead, Plaintiff alleges he
3  was defrauded and not compensated for his 100 shares causing him damages in an amount in excess of
4  $3,800,000.00.

5        In the current motion, Plaintiff seeks an order disqualifying the law firm of opposing counsel,
6  Lionel Sawyer & Collins ("LS&C") as counsel for the Defendants in this case asserting the law firm is
7  precluded by Rule 1.9 of the Nevada Rules of Professional Conduct from representing the Defendants
8  in this action.  Plaintiff claims that, after he retired on June 30, 2006, he had multiple conversations
9  with Dr. Marcus Earling, the President and CEO of LMC "regarding various legal issues that were
10 confronting him and LMC."  The Plaintiff claims that he discussed various matters with Dr. Earling
11 which Dr. Earling agreed to discuss with LMC's legal counsel, LS&C.  Plaintiff claims that when he
12 had conversations with Dr. Earling "he was speaking with the Corporation's counsel through Dr.
13 Earling."  The motion relates the substance of his conversations with Dr. Earling which he expected Dr.
14 Earling would discuss with LS&C.  The Plaintiff claims that, during these discussions, he understood
15 that LMC's counsel, LS&C "was helping him pursuant to his status as a career employee and current
16 shareholder of LMC."  He also claims he relied on LS&C's advice in deciding what actions to take.

17       At some point, he does not specify when, Plaintiff claims LS&C used his communications to
18 Dr. Earling against him in subsequent litigation.  Specifically, LMC now takes the position Dr.
19 Slaughter was seeking to defraud his creditors by making requests of LMC which LMC consulted
20 LS&C about.  Plaintiff "takes strong exception" to LMC, LS&C and especially Mark Goldstein taking
21 his confidential communications and using them against him.  The motion attaches excerpts of the
22 deposition of Dr. Earling taken March 4, 2010 to support his position that Mark Goldstein was the
23 corporate attorney for LMC.  Mr. Goldstein was hired by LMC in approximately November 2006.

24       Plaintiff filed his complaint in this case March 30, 2010, after Dr. Earling's deposition was
25 taken naming Mark Goldstein individually.  On April 19, 2010, Mr. Goldstein's deposition was taken.
26 During his deposition, Mr. Goldstein testified that Dr. Earling hired LS&C in the fall of 2006 for
27 general representation on behalf of LMC.  He disagreed that LS&C was LMC's "corporate counsel".
28 Mr. Goldstein also testified at his deposition that there was a retention agreement between LMC and

1  LS&C and that it is customary to include a statement in the retention agreement that the law firm does
2  not represent individual shareholders because of the potential for conflicts of interest between
3  shareholders and the company.  However, LS&C is currently representing individual shareholders in
4  this case "and is even representing retained shareholders against a retired shareholder, Dr. Slaughter."
5        Under these circumstances, Plaintiff claims that LS&C previously represented him as a
6  shareholder of LMC and is now representing LMC and all individual shareholders in a matter which is
7  the same or substantially related to a matter in which LS&C previous represented him.  Additionally,
8  LS&C obtained confidential and privileged information by the Plaintiff as a shareholder of LMC when
9  Plaintiff sought legal advice from LS&C.  Citing *Waid v. Eighth Judicial District Court*, 121 Nev. 605
10 (2005), Plaintiff argues that disqualification of LS&C is required by Rule 1.9, and that 1.10 of the
11 Nevada Rules of Professional Conduct imputes a conflict of interest to the entire law firm.
12       Defendants oppose the motion asserting LMC's counsel, LS&C, did not begin to represent LMC
13 until October 2006, several months after Slaughter retired from LMC.  Additionally, the LS&C/LMC
14 engagement letter expressly disclaimed any representation of, or duty to, any LMC shareholder.
15 Defendants point out that Plaintiff Slaughter waited for more than three years before raising this
16 purported conflict of interest, on the eve of the final hearing in his American Arbitration Association
17 case.  Defendants also point out that the Plaintiff has been represented by a team of lawyers since
18 retiring from LMC on June 30, 2006.  Beginning in 2003, he was named as a Defendant in a federal
19 lawsuit in the District of Washington in which he was represented by counsel.  After LMC initiated a
20 state interpleader action on February 5, 2007, Dr. Slaughter retained David Merrill, Esq. of The Merrill
21 Law Firm to represent him.  Mr. Merrill represented Dr. Slaughter through the filing of Slaughter's
22 arbitration demand.  Attorneys George Ogilvie and Jacqueline Leleu of the law firm of McDonald
23 Carano Wilson took over Dr. Slaughter's representation.  McDonald Carano Wilson in turn was
24 succeeded by Slaughter's current counsel, Dennis Leavitt, Esq., of The Leavitt Law Firm.
25       Dr. Slaughter has not claimed, until filing the instant motion, that he has had an attorney-client
26 relationship with LS&C even though LS&C has deposed him twice in connection with other
27 adjudicated proceedings in which LMC had an adverse interest to Dr. Slaughter.
28

# DISCUSSION

A court may disqualify an attorney from representing a party where there exists (1) a clear violation of the professional rules of conduct; (2) which affects the public view of the judicial system or the integrity of the court; and (3) which is serious enough to outweigh the parties' interests in counsel of their choice. *Kalinauskas v. Wong*, 808 F. Supp. 1469, 1472 (D. Nev. 1992) (*citing Optyl Eyewear Fashion Intern. v. Style Companies*, 760 F.2d 1045, 1049 (9th Cir. 1985); *In re Coordinated Pretrial Proceedings, Etc.*, 658 F.2d 1355, 1360-61 (9th Cir.1981)).  To prevail on a motion to disqualify opposing counsel, the moving party must establish by a reasonable possibility that an ethical violation occurred. *Palmer v. Pioneer Hotel & Casino*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998) ("*Palmer I*") (*citing Cronin v. Eighth Judicial District Court*, 781 P.2d 1150, 1153 (Nev. 1989)).  Once an ethical violation is established, the court has broad discretion in determining whether disqualification, or some lesser sanction, is warranted. *Faison v. Thornton*, 863 F. Supp. 1204, 1215 (D. Nev. 1993); *Cronin*, 781 P.2d at 1153.  Where disqualification is contemplated, "any doubt is resolved in favor of disqualification." *Faison*, 863 F. Supp. at 1216 (*citing* Cronin, 781 P.2d at 1153. "At the same time, however, the [C]ourt views disqualification as an extreme sanction," *Palmer I*, 19 F. Supp. 2d at 1162 (*quoting Brown v. St. Joseph County*, 148 F.R.D. 246, 255 (N.D. Ind. 1993)), which should be imposed only after a careful consideration of the client's right to be represented by the counsel of his choice, and the nature and extent of the ethical violation. *Faison*, 863 F. Supp. at 1217.

Attorneys admitted to practice before the United States District Court for the District of Nevada "shall adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." LR IA 10-7.

Plaintiff claims that LS&C should be disqualified pursuant to the provisions of Rule 1.9 of the Nevada Rules of Professional Conduct.  It governs a lawyer's duties to former clients, and provides, in pertinent part:

    (a)    A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Plaintiff also relies of the provisions of Rule 1.10(e) which governs imputation of conflict of interest. It provides:

> When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:
>
> (a) the personally disqualified lawyer did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9;
>
> (b) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (c) written notices promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

Plaintiff claims that LS&C previously represented him as a shareholder of LMC and the firm is now representing LMC and all individual shareholders of LMC against him in matter which are related to this parties' Stockholder's Agreement. The matters are substantially related, and as such, LS&C has a disqualifying conflict of interest. The court finds the Plaintiff has not met his burden of establishing a reasonable possibility that LS&C has engaged in an ethical violation. Plaintiff has not established the existence of an attorney-client relationship with LS&C. Rather, he alleges that after he retired from LMC on June 30, 2006, he had conversations with Dr. Earling, the President and CEO of LMC, and Lance Spindler, the Chief Financial Officer of LMS, "regarding various legal issues that were confronting him and LMC."

As counsel for Plaintiff acknowledges, at the time of these discussions, the retainer agreement between LMC and LS&C specifically provided that LS&C did not represent individual shareholders because of the potential for conflicts of interest between shareholders and the company. The Nevada Supreme Court has stated that "generally, a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies." *Waid v. Eighth Judicial District Court*, 120 Nev. 605, 611 (2005).

Plaintiff does not claim that he had any direct communications with a lawyer at LS&C which were intended to be confidential and for the purpose of obtaining legal advice. Rather, he claims he spoke with Dr. Earling and Mr. Spindler, in their capacities as corporate officers of LMC, about legal issues that confronted both the Plaintiff and LMC. NRS 49.045 defines a client, for purposes of the

attorney-client privilege. It provides, in pertinent part: "'client' means a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him." NRS 49.065 defines an attorney for purposes of the attorney-client privilege as any person "authorized or reasonably believed by the client to be authorized, to practice law in any state or nation." At most, Plaintiff has shown that his communications with Dr. Earling and/or Mr Spindler were intended to be relayed to LS&C. Plaintiff has not established that he was a client of LS&C. Plaintiff has also not established that he provided Dr. Earling or Mr Spindler with confidential information that was intended to be relayed to LS&C for the purpose of providing Plaintiff personal legal advice. Rather, as Plaintiff's affidavit makes clear, his conversations with these LMC corporate officers were for the purpose of requesting that the corporation take certain actions Dr Slaughter believed would be advantageous to him. Dr Earling discussed Plaintiff's requests with LMC's counsel who gave the corporation (LMC) advice that what Dr Slaughter was requesting was prohibited. This opinion was in turn communicated to the Plaintiff. LS&C performed legal services for LMC, not the Plaintiff.

For all of the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Disqualify Lionel Sawyer & Collins as Counsel for Defendants (Dkt. #15) is **DENIED.**

Dated this 5th day of November, 2010.

Peggy A. Leen
United States Magistrate Judge