UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DR. RONALD SLAUGHTER, | ) | Case No.: 2:10-cv-00437-GMN-PAL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| LABORATORY MEDICINE CONSULTANTS, LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **INTRODUCTION**

Before the Court is Defendants Laboratory Medicine Consultants, Ltd. (LMC), Mark Goldstein, Esq., Dr. Marcus A. Erling, Dr. James E. Beecham, Dr. Jonathan H. Hughes, Dr. Jerry W. Hussong, Dr. Steven E. Kolker, Dr. David P. Marmaduke, Dr. Todd C. Murray, Dr. Steven M. Ruhoy, Dr. June D. Sigman, Dr. James L. Unger, and Dr. Noel S. Yumiaco's Motion to Dismiss (ECF No. 4). Plaintiff, Dr. Ronald Slaughter filed a Response on May 3, 2010 (ECF No. 8) and Defendants filed a Reply on May 13, 2010 (ECF No. 9).

Also before the Court is Defendant Aurora Diagnostics, LLC's Motion to Dismiss (ECF No. 7). Plaintiff filed a Response on May 13, 2010 (ECF No. 10) and Defendant Aurora filed a Reply on May 25, 2010 (ECF No. 11).

Having considered the pleadings and arguments the Court hereby GRANTS both Motions to Dismiss (ECF No. 4 & ECF No. 7).

## **FACTS AND BACKGROUND**

LMC is a Nevada professional corporation which was formed in 1969 and operates as a pathology practice. Dr. Slaughter worked at LMC for 31 years and retired June 30, 2006. LMC redeemed all of Dr. Slaughter's stock in accord with the parties' 2001 Stockholders'

Agreement at that time. (*See* 2001 Stockholder's Agreement, Ex. C-1, pg. 8, Section 8 ECF No. 4–3 ("... upon ... termination of employment of a Stockholder ... the Corporation shall redeem all of the affected Stockholder's Shares ...")). Under the 2001 Stockholder's Agreement, a portion of Slaughter's deferred compensation benefits was to be secured by an escrow of Dr. Slaughter's stock. (*See id.* at pg. 15, Section 11B(a)(ii), ("... until the Withdrawing Stockholder has received his or her full compensation under this section, his or her shares of stock shall be held in escrow to secure payment.")  The parties dispute whether Dr. Slaughter's shares were ever placed in escrow.   The parties also dispute if the redeemed stock became treasury stock by operation of Nevada law in which case the treasury stock is not considered outstanding stock for any purpose.

Sometime after Dr. Slaughter's retirement, Defendant Aurora Diagnostics LLC ("Aurora") made an unsolicited proposal to purchase 100% of the equity of LMC and retain the active LMC pathologists as employees.  The deal closed on December 10, 2007.  Dr. Slaughter alleges that his shares were not properly placed in escrow and Defendants conspired to defraud him of the value of his shares during the sale of LMC to Aurora.  Dr. Slaughter filed suit in state court in March 2007 and then brought an arbitration case against LMC on September 7, 2007.  The arbitration case was continued at Dr. Slaughter's request and Dr. Slaughter then filed this case on March 30, 2010.  The arbitration case was still pending as of the date of Defendants' motion so Plaintiff petitioned this Court to stay the arbitration, but this Court denied Plaintiff's request. (ECF No. 18).

Dr. Slaughter asserts claims for §78j(b) and Rule 10b-5 federal securities violations, as well as state law claims for breach of contract, conversion, civil conspiracy, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  Defendants argue for dismissal based on a number of reasons including Plaintiff's lack of standing to assert a securities fraud violation.

# DISCUSSION

## A. Legal Standard

Federal courts are courts of limited jurisdiction and they can adjudicate only those cases that the Constitution and Congress authorize them to adjudicate. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673 (1994). Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[i]f a court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Pro. 12(h)(3) (2008).

Jurisdiction to consider claims brought under the Securities Exchange Act of 1934 is vested exclusively in the federal courts. 15 U.S.C. § 78aa; *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985). Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful:

> for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(j). Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made in the light of the circumstances under which they were made, not misleading, or

>  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.

A cause of action under section 10(b) applies only to misrepresentations or omissions made "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999). Only a purchaser or seller of securities has standing to bring action under section 10(b) and Rule 10b-5. *Id.* (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917 (1975); *See also Shivers v. Amerco*, 670 F.2d 826, (9th Cir. 1982) (Under federal antifraud rule, only a purchaser or seller of securities may bring a suit for damages.).

**B.    Standing**

Plaintiff brings this action in federal court based on alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). As Plaintiff is alleging a securities violation, in order for Plaintiff to have standing in this case he must allege that either he purchased or sold a security (in this case his LMC stock). *Binder*, 184 F.3d at 1066.

Plaintiff does not state any facts in his complaint that amount to him either selling or purchasing LMC stock. Instead Plaintiff alleges that either (1) his shares of stock were never transferred or held in escrow by LMC (Complaint ¶ 34, ECF No. 1) or (2) his shares of LMC stock were wrongfully converted from Dr. Slaughter to LMC (*Id.* at ¶ 41) or (3) his shares of outstanding stock in LMC disappeared (*Id.* at ¶ 44). Under Plaintiff's first claim for relief alleging violations under Section 10(b) and Rule 10b-5, he alleges that "[t]he actions of Defendants and each of them and their representatives as herein alleged were done to carry out a plan, scheme and course of conduct to intentionally defraud Dr. Slaughter by Aurora

purchasing 100% of the capital stock of LMC **without purchasing Dr. Slaughter's 100 outstanding shares** thereby enriching themselves to the detriment of Dr. Slaughter." (emphasis added).  As demonstrated here, Plaintiff's Complaint is fatally flawed due to lack of standing.

Plaintiff argues that one does not have to be a purchaser or seller of a security to have standing to bring a securities law violation.  Plaintiff explains that the alleged harm occurred when the Defendants "allegedly caused Dr. Slaughter's stock to be "redeemed" on December 10, 2007 for $10,000 while at the same time selling their own stock to Aurora Diagnostics with each individual doctor receiving $4,304,545.46." (Response 14:23–26, ECF No. 8). Plaintiff asserts that this is enough to establish standing relying on *Brown v. Ivie*, 661 F.2d 62 (5th Cir. 1981).

In *Brown*, the Fifth Circuit Court of Appeals reversed a district court decision which held that Plaintiff's complaint failed to state a claim under federal securities law. *Id.* at 67. The Court of Appeals held that Plaintiff did state a claim explaining:

> A necessary element of a Rule 10b-5 offense is that the fraud or deceit be "in connection with" the sale of a security. . . .[T]he "plaintiff in a Rule 10b-5 case need not establish a direct or close relationship between the fraudulent transaction and the purchase or sale, but only that the transaction (involving the sale) 'touch' the transaction involving the defendant's fraud." Whether fraudulent omissions or misrepresentations are too remote to be "in connection with" the sale of a security depends upon the individual facts of each case. . . .[W]e conclude that the alleged fraud by the defendants was made "in connection with" the sale of a security.

The plaintiff in *Brown* had refused to sell his stock back to the corporation pursuant to a buy-sell agreement.  The alleged fraud in that case involved requiring the plaintiff to enter into the buy-sell agreement so that he would be forced to sell his stock when the defendants fired him seven days later.  In holding that the plaintiff has stated a claim the court found that:

"[s]ince a contract for the sale or disposition of stock constitutes a sale of a security for purposes of the federal securities laws, 15 U.S.C. §§ 77b(3) and 78c(a)(14), the defendants' fraud, as alleged, is "in connection with" the sale of a security. Nowhere in the opinion does the court discuss the plaintiff's standing or lack thereof.

Contrary to the plaintiff in *Brown*, Plaintiff in this case does not allege that he was forced to sell his stock or even that it was sold. Plaintiff alleges harm based on Defendants' actions in either not placing the stock in escrow or placing the stock in escrow and then converting it. (Complaint ¶ 73). Plaintiff's alleged injuries were not caused by his purchase or sale of securities. The mere involvement of shares of stock does not bring a transaction within Rule 10b-5. *See Desert Land, LLC v. Owens Financial Group, Inc.*, 154 Fed.Appx. 586 (9th Cir. 2005) ("[T]he the mere allegation that a contractual breach involved a security does not confer standing to assert a 10b-5 action."); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."); *Gigliotti v. Mathys*, 129 F.Supp.2d 817, 823 (D.Vi.2001) (holding that "mere involvement of shares of stock does not bring a transaction within Rule 10b-5, unless the value of the securities (or consideration) involved is misrepresented"). Therefore, Plaintiff lacks standing to bring a claim under Section 78(j) or Rule 10b-5 for a federal securities violation and his first claim for relief must be dismissed.

Plaintiff's second claim for relief must also be dismissed. "To establish a claim under section 20(a) of the Exchange Act, a plaintiff must allege: (1) a primary violation of the federal securities laws; and (2) that the defendants possessed, directly or indirectly, power or control over the primary violator." *Brown v. Kinross Gold, U.S.A.*, 343 F.Supp.2d 957 (D. Nev. 2004). As this court has ruled that Plaintiff's first claim fails because Plaintiff lacks standing to assert federal securities claims, Plaintiff's second claim also fails because the

underlying securities violation necessary to state a section 20(a) claim is lacking. *See id.*

As a result of this Court's dismissal of Plaintiff's claims for federal securities violations, this Court no longer has subject matter jurisdiction. Plaintiff's remaining claims arise under state law. "A federal court cannot exercise supplemental jurisdiction over state-law claims if the federal court lacks original jurisdiction in the case." *Desert Land*, 154 Fed.Appx. at 588. Accordingly, Plaintiff's Complaint must be dismissed in its entirety.

Finally, the Court finds that it would be futile to allow plaintiff to amend his complaint to allege federal securities violations. Plaintiff avoided any opportunity to allege that he sold his shares (in fact Plaintiff has been careful not to allege that he sold his shares) and should not be allowed to make a complete one-eighty turn to allege that he did sell his shares. Therefore the Court will dismiss Plaintiff's Complaint with prejudice.

**C.     Statute of Limitations**

Alternatively, assuming Plaintiff has standing because the fraud occurred in connection with the sale of a security, his claim is nonetheless time barred by the statute of limitations. Federal securities claims are time barred pursuant to 28 U.S.C. §1658(b)(1), which provides that such claims must be filed "not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." The Supreme Court recently held that discovery of the facts constituting the violation occurs when the plaintiff actually discovers the facts constituting the violation, or when a reasonably diligent plaintiff would have discovered the facts constituting the violation- whichever comes first. *Merck & Co., Inc. v. Reynolds*, — U.S. —, 130 S.Ct. 1784, 1790 (2010).

Plaintiff claims that he did not become aware of all the necessary facts regarding how his stock was converted until the middle of 2009. Plaintiff's complaint alleges that his shares were wrongfully converted and not placed into escrow. He further explains that because his

shares were not properly placed into escrow, his shares were not purchased by Aurora, causing Plaintiff to suffer damages.

However, Defendants' evidence demonstrates that a reasonable plaintiff would have been aware of the facts necessary to allege a federal securities violation by December of 2007. In September 2007 Plaintiff's attorney, David Merrill, sent a letter questioning whether Plaintiff's shares were being held in escrow. (*See* 9/13/07 Letter, Ex. A-3, ECF No. 4). Mark Goldstein, on behalf of LMC, responded with a letter sent to Plaintiff on September 18, 2007 which states unequivocally that Dr. Slaughter is not a stockholder, but a secured creditor and that his shares were redeemed under Section 8 of the 2001 Agreement and were not counted as outstanding under N.R.S. 78.283. (*See* 9/18/07 Letter, Ex. A-4, ECF No. 4). An e-mail written to the LMC retiree shows that Plaintiff knew that LMC may not have put his shares into escrow on September 25, 2007. (*See* 9/25/07 e-mail, Ex. B-21, ECF No. 4-1). By December 11, 2007, Plaintiff knew that the Aurora stock sale transaction took place on December 10, 2007. (*See* 12/11/07 email, Ex. B-24, ECF No. 4-1). Thus by the end of December Plaintiff was aware that his shares might not have been placed in escrow, that LMC claimed to have "redeemed" his shares, that his shares were not being considered as outstanding shares, and only the outstanding shares of LMC were being purchased by Aurora. Plaintiff's complaint does not allege anything more than this.

Based on the allegations put forth by Plaintiff to state a securities fraud violation, Defendants have demonstrated sufficient facts to show that a reasonable plaintiff would have been aware of all the necessary facts by late December 2007. Plaintiff's blanket statement that he was not aware of all of the necessary facts regarding how his stock was converted is not adequate to overcome Defendants proof. Plaintiff does not explain what was missing from the above information and reviewing Plaintiff's complaint there is nothing more alleged to show that Plaintiff did not know that his shares were either not in escrow or would not be

included in the Aurora stock purchase transaction by December 2007.  Plaintiff did not file this suit until March 30, 2010, more than two years after December 2007.  Accordingly, the Court finds that Plaintiff's claims of a securities violation under Section 10(b) and Rule 10B-5 are time barred pursuant to 28 U.S.C. §1658(b)(1). Since Plaintiff's claim of a federal securities violation is time barred, this Court does not have subject matter jurisdiction over this case and it must be dismissed for the reasons given *supra*.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Laboratory Medicine Consultants, Ltd. (LMC), Mark Goldstein, Esq., Dr. Marcus A. Erling, Dr. James E. Beecham, Dr. Jonathan H. Hughes, Dr. Jerry W. Hussong, Dr. Steven E. Kolker, Dr. David P. Marmaduke, Dr. Todd C. Murray, Dr. Steven M. Ruhoy, Dr. June D. Sigman, Dr. James L. Unger, and Dr. Noel S. Yumiaco's Motion to Dismiss (ECF No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Aurora's Motion to Dismiss (ECF No. 7) is also **GRANTED**.

Plaintiff's Complaint is **DISMISSED with prejudice**.

DATED this 19th day of April, 2011.

_____
Gloria M. Navarro
United States District Judge